**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 535 W Bethany LLC, | No. CV-25-04433-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Swig Stores LLC, | |
| Defendant. | |

Before the Court is Defendant Swig Stores LLC's ("Swig") Motion to Dismiss (Doc. 11).  The Court **grants in part and denies in part** Swig's Motion for the reasons below.

## I.    BACKGROUND

This is a breach of contract case between Plaintiff 535 W. Bethany, LLC ("Landlord") and Swig.  Landlord's Complaint alleges as follows.

On November 15, 2024, Landlord and Swig entered a ten-year lease (the "Lease"), wherein Landlord leased approximately 17,202 square feet of land located at 535 W. Bethany Home Road in Phoenix, Arizona (the "Property").  (Doc. 1 at 2.)  Swig planned to install an approximately 800 square foot free-standing building on the Property with a drive thru.  (*Id.* at 3.)  Landlord demolished the prior improvements located on the Property, installed fencing, and delivered the premises to Swig on December 2, 2024.  (*Id.* at 4.)

Pursuant to Section 19.20.1 of the Lease, Swig was given 90 days from the effective date of the Lease to "obtain all necessary licenses, permits and approvals from any

governmental authority or agency necessary to construct Tenant's Building on the Premises and conduct its business for the Permitted Use (collectively, the 'Governmental Approvals')." (*Id.* at 5.)  Swig agreed, pursuant to Section 19.20.2, "to promptly commence and diligently pursue commercially reasonable efforts to obtain all Governmental Approvals." (*Id.*)

This 90-day period is known as the "Feasibility Period". (*Id.* at 4–5.)  The Feasibility Period ended February 17, 2025. (*Id.* at 5.)  Pursuant to Section 19.20.4 of the Lease, Swig had the discretionary right to "elect to terminate this Lease by giving Landlord written notice (the "Notice of Termination") on or before the expiration of the Feasibility Period." (*Id.* at 5–6.)

Swig failed to obtain the necessary Governmental Approvals before February 17, 2025. (*Id.* at 6.)  On February 17, Landlord informed Swig that the Feasibility Period ended and that Swig waived its right to terminate the Lease. (*Id.*)  Swig eventually submitted its application for a use permit to the City of Phoenix on March 4, 2025. (*Id.*)

On June 25, 2025, Landlord sent Swig a Notice of Default again informing Swig that the Feasibility Period ended and that Swig waived its right to terminate the Lease. (*Id.*)  On August 29, 2025, Swig sent Landlord a Notice of Termination, indicating it could not move forward with the project because the City denied its application. (*Id.*)  Landlord responded, through counsel, stating that Swig's Notice was untimely, and therefore, ineffective. (*Id.* at 7.)  Landlord also conveyed that Swig was in material breach of the Lease and that it was terminating the Lease on that basis. (*Id.*)

Section 16 of the Lease includes a rent acceleration clause should Swig default. (*Id.* at 8.)  Under that clause, if Landlord terminates the Lease pursuant to Swig's default, Swig shall immediately "become liable to Landlord for damages for the entire breach in an amount equal to the total Rent and all other payments due for the balance of the Term discounted at the rate of two percent (2%) per annum to the then present value, plus the cost of repossessing, remodeling and re-renting the Premises and all unpaid Rent through the date of such termination." (*Id.*)  Thus, Landlord claims it is entitled to $776,283.55 in

unpaid rent discounted at the two percent rate.  (*Id.* at 9.)

Landlord sues Swig for breach of contract and breach of the implied covenant of good faith and fair dealing.  (*Id.* at 10–11.)  Swig now moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 11 at 3.)

**II.    LEGAL STANDARD**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations

- 3 -

of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.   DISCUSSION

The Court begins with Landlord's breach of contract claim.

### A. Breach of Contract

"To state a breach of contract claim, a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 434 (Ariz. Ct. App. 2014). The Complaint alleges Swig breached the Lease by: (1) failing to timely submit its application to the City; (2) sending Landlord a Notice of Termination; and (3) failing to take possession of the premises and begin paying rental income. (Doc. 1 at 10.) The Complaint claims these breaches cost Landlord: (1) $776,283.55 in unpaid rent; (2) $16,795 for cost of demolishing the prior improvements on the Property and installing fencing; and (3) $17,325 in leasing commissions paid to Swig's broker after the Feasibility Period. (*Id.*) Swig contends Landlord fails to plausibly plead both breach and damages. The Court begins with breach.

1. *Breach*

a.   Failure to Timely Submit Application

The Lease gave Swig 90 days to acquire the necessary Governmental Approvals. In this pursuit, Swig agreed to act promptly and diligently. Swig submitted its application to the City of Phoenix on March 4, 2025—fifteen days after the Feasibility Period ended. Therefore, there are sufficient factual allegations to reasonably infer that Swig breached its contractual obligation to promptly apply for Governmental Approvals. Moreover, Swig

- 4 -

recognizes, at this juncture, it must accept as true the allegation that "it failed to make reasonable and timely efforts to obtain the City of Phoenix permits." (Doc. 15 at 2 n.1.)

Accordingly, the Court finds that Landlord plausibly pleads that Swig breached the Lease by failing to timely submit its application.

b. Notice of Termination

Landlord argues that Swig's Notice of Termination was an anticipatory breach of the Lease because Swig had no right to terminate the Lease outside the Feasibility Period. The Court disagrees because Swig has such rights under Section 19.20.2. This provision states:

> Permits. Tenant agrees to promptly commence and diligently pursue commercially reasonable efforts to obtain all Governmental Approvals. Tenant further agrees to respond to any comments, if any, to its permit application provided by a governmental agency within fourteen (14) days after Tenant receives such comments. *If Tenant has not obtained the Government Approvals prior to the expiration of the Feasibility Period, then either party may terminate this Lease by written notice to the other party, with such option to terminate expiring when the Governmental Approvals are obtained by Tenant*. Notwithstanding anything to the contrary herein, Tenant shall have the right to terminate this Lease at any time prior to the expiration of the Feasibility Period.

(Doc. 11 at 32 (emphasis added); Doc. 13 at 13.)

This provision establishes that if the Feasibility Period ends and Swig has not obtained the Governmental Approvals, then either the Landlord or Swig may terminate the Lease. Landlord disagrees, arguing that this provision only allows termination *before* the Feasibility Period expires. But there is no way to determine whether a tenant "has not obtained the Government Approvals prior to the expiration of the Feasibility Period" until *after* such period ends. Consider the student paper due at midnight. One cannot know whether a student fails to submit her paper within this timeframe until midnight's chime. As most students can attest, an 11:59 p.m. submission is just as punctual as earlier entries. Consequently, failure cannot be measured until the designated period completely expires. Same too here. The Feasibility Period must end to determine if Swig failed to acquire the Governmental Approvals within this timeframe. Therefore, the right to terminate under

this provision is a post-Feasibility Period right.

The last sentence of 19.20.2 supports this construction. In closing, it gives tenants the ability to terminate the lease at "any time prior to the expiration of the Feasibility Period." Thus, the prior sentence must concern post-Feasibility Period terminations or else the final, all-encompassing permission to terminate pre-Feasibility Period would render it meaningless. In other words, if Section 19.20.2 only intended for Swig to terminate before the Feasibility Period ended, then it needed only state: "Tenant shall have the right to terminate this Lease at any time prior to the expiration of the Feasibility Period." Full stop. But it did not do so. Thus, to ensure meaning to each provision of 19.20.2, the Court rejects Landlord's interpretation that 19.20.2 only allows Swig to terminate before the Feasibility Period expires. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 975 (Ariz. Ct. App. 2010) ("It is a cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render meaningless another term.").

This construction is consistent with the Lease as a whole. Landlord argues that this interpretation would allow Swig to ignore its obligation to obtain the Governmental Approvals within the 90-day Feasibility Period "into perpetuity." (Doc. 13 at 14.) The Court disagrees. The Feasibility Period is Swig's ultimate safe harbor. Pursuant to Section 19.20.2, if Swig fails to timely acquire the Governmental Approvals by the end of the Feasibility Period, then Landlord has the right to terminate the Lease. The only way for Swig to ensure Landlord does not exercise this right, and thereby protect its interest in the Property, is for it to acquire the Governmental Approvals before the Feasibility Period ends. Thus, the opportunity to terminate post-Feasibility Period does not obviate Swig's motivation to abide the 90-day timeframe.

Next, Landlord argues the opportunity to terminate *during* the Feasibility Period is rendered meaningless if Swig can terminate *after* the Feasibility Period. Again, the Court disagrees. Swig only has unfettered discretion to terminate the Lease for *any* reason if it does so before the Feasibility Period expires. After such, Swig may only terminate for *one* reason: failure to acquire the Governmental Approvals. Thus, Swig's right to terminate is

at its zenith before the Feasibility Period ends.  During this period, it can, for example, terminate the Lease because of unanticipated construction costs, dismal revenue projections, increased competition, or even a better offer.  But it cannot do so after.  Accordingly, the narrow opportunity to terminate post-Feasibility Period does not render the plenary right to terminate the Lease within the Feasibility Period meaningless.

Finally, Landlord strangely argues that Swig's second right to terminate is "conditioned on it compliance with the first sentence of Section 19.20.2 which requires that it 'promptly commence and diligently pursue commercially reasonable efforts to obtain all Governmental Approvals.'" (Doc. 13 at 14 (emphasis omitted).)  But Section 19.20.2 does not include conditional language.  It states: "If Tenant has not obtained the Government Approvals prior to the expiration of the Feasibility Period, then either party may terminate this Lease by written notice to the other party, with such option to terminate expiring when the Governmental Approvals are obtained by Tenant." (Doc. 11 at 32; Doc. 13 at 13.)  "When the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not add something to the contract which the parties have not put there." *Covington v. Neumann*, No. 1 CA-CV 24-0096, 2024 WL 4751483, at *3 (Ariz. Ct. App. Nov. 12, 2024) (citation modified) (quoting *Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 518 (Ariz. 2008)).  Thus, the Court rejects Landlord's construction.

Based on the foregoing, the Court finds that Landlord cannot plausibly plead that Swig breached the Lease by sending a Notice of Termination after the Feasibility Period because Swig had the contractual right to do so.  Accordingly, the Court grants Swig's Motion as to this theory of breach with prejudice.

### c.   Failure to Take Possession and Pay Rent

Landlord's third theory of breach is similarly reliant on the premise that Swig had no right to terminate the Lease.  Given the above analysis, the Court also grants Swig's Motion as to this theory of breach with prejudice.

2. *Damages*

The only remaining theory of breach is Swig's failure to promptly and diligently submit its application to the City. Therefore, Landlord must plausibly allege that this breach caused its claimed damages to state a breach of contract claim. *See Wilson v. PNC Mortg.*, No. 1 CA-CV 14-0024, 2015 WL 448601, at *8 (Ariz. Ct. App. Feb. 3, 2015) ("Damages recoverable in a contract action are those proximately caused by the breach." (citation modified)). The Court finds it cannot do so.

a. Unpaid Rent

The Complaint specifically alleges that Swig's anticipatory breach allowed it to accelerate rent pursuant to Section 16 of the Lease. (Doc. 1 at 7.) Therefore, Landlord argues it is entitled to an adjusted $776,283.55 in unpaid rent. (Doc. 1 at 9.) However, because the Court finds that Landlord fails to plead that Swig anticipatorily breached the Lease, these damages cannot sustain a breach of contract claim. Moreover, Landlord cannot allege that Swig's failure to promptly and diligently submit its application to the City amounted to a default warranting acceleration under Section 16.

Pursuant to Section 16, Landlord cannot accelerate rent unless it terminates the Lease pursuant to "any Event of Default." (*Id.* at 7–8.) Section 15 defines an "Event of Default" as: "Tenant fails to comply with any other term, provision or covenant of this Lease where such failure continues for a period of thirty (30) calendar days after Landlord's written notice thereof to Tenant ('Landlord's Default Notice')." (Doc. 11 at 24.) Thus, default warrants rent acceleration where Swig fails to continuously cure its noncompliance for thirty days following written notice from Landlord. However, Landlord sent its Notice of Default on June 25, 2025. (Doc. 1 at 6.) Swig applied to the City on March 4, 2025. (*Id.*) Consequently, Landlord cannot allege that Swig continuously failed to apply to the City for thirty days after June 25.

Even assuming Landlord's February 17, 2025 correspondence amounted to a Notice of Default, though it is not alleged to be, Landlord cannot allege that Swig failed to cure any noncompliance for thirty days following this notice. On March 4, 2025 Swig applied

to the City—i.e., fifteen days after the February 17 notice.  Thus, Landlord cannot allege that Swig continuously failed to apply to the City for a period of thirty days following this notice.  And therefore, Landlord cannot allege an event of default that could warrant acceleration here.

Accordingly, Landlord fails to plead that Swig's failure to timely apply to the City caused it $776,283.55 in adjusted, unpaid rent.

### b.  Demolishing Prior Improvements and Installing Fencing

Next, the Complaint summarily states that Swig's breach caused Landlord to suffer $16,795 in costs for demolishing the prior improvements on the Property and installing fencing the premises.  However, Landlord cannot allege that Swig's failure to diligently submit its application to the City caused this expense.  At the time Landlord and Swig entered into the Lease, there were existing improvements on the Property.  (*Id.* at 4.) Landlord demolished the prior improvements located on the Property, installed fencing, and delivered the premises to Swig on December 2, 2024.  Swig could not untimely apply to the City until after February 17, 2025.  Therefore, Landlord cannot allege that Swig's noncompliance caused this expense.

Moreover, Swig persuasively argues that Landlord agreed to bear this expense. (Doc. 11 at 10–11.)  Exhibit B to the Lease states: "Landlord, at its sole cost and expanse [sic] shall demolish the existing improvements on the Property, and deliver the site rough graded to the Tenant" and "Landlord shall not demolish the existing improvements until the expiration of the Feasibility Period and Tenant has waived all termination rights." (Doc. 11 at 36.)  Thus, Landlord contractually agreed to cover the costs of the demolition. Additionally, Landlord demolished the improvements prematurely.  It agreed to wait until the Feasibility Period ended and Swig waived all of its termination rights.  Accordingly, Landlord cannot claim damages for costs it contractually bore and prematurely incurred.

### c.  Leasing Commissions

Next, the Complaint summarily states that Swig's breach caused Landlord to suffer $17,325 in leasing commissions paid to Swig's broker "only after the Feasibility Period as

contemplated by the Lease ended." (Doc. 1 at 10.) Landlord fails to explain which provisions of the Lease substantiate this claim. Regardless, Landlord cannot allege that Swig's failure to diligently submit its application to the City caused this expense.

Section 19.7 states that the Landlord would pay Swig's broker, "as compensation for services it has rendered in connection with the lease for Tenant, Four Percent (4.0%) rents of the initial term." (Doc. 11 at 28.) Landlord agreed to pay "½ upon mutual lease execution and ½ upon Tenant's opening of business and payment of the first month's rent." (*Id.* at 28–29.) Thus, Landlord only seeks to recoup the first installment. However, this payment was made upon the Lease's execution—November 14, 2024. Therefore, Swig's untimely application could not cause this expense. Again, Swig notes that Landlord contractually agreed to bear this expense.

Based on the foregoing Landlord cannot state a claim for breach of contract because it cannot allege that Swig's failure to timely apply to the City caused it to suffer any of its claimed damages. Accordingly, the Court finds that Landlord fails to state a claim for breach of contract and grants Swig's motion to dismiss count one of Landlord's Complaint. The Court dismisses this count with prejudice because Landlord cannot cure the deficiencies identified above, therefore, amendment would be futile.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Complaint alleges Swig breached the implied covenant by failing to timely submit its application to the City of Phoenix. (Doc. 1 at 11). Notably, Swig's Motion does not address this claim. And Swig's sole arguments against Landlord's breach of contract claim do not apply with equal force because "[a] party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract." *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 760 (Ariz. Ct. App. 2006).

Accordingly, the Court denies Swig's Motion as to this count.

**C. Attorneys' Fees and Costs**

Both parties ask the Court to award its attorneys' fees and costs incurred in this action

pursuant to the Lease and A.R.S. §§ 12-341 and 12-341.01.[1] (Doc. 11 at 12; Doc. 12 at 17.) Because a claim remains pending, the Court will not award attorneys' fees at this juncture.

## IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting in part and denying in part** Swig's Motion to Dismiss (Doc. 11).   The Court dismisses Landlord's breach of contract claim with prejudice.  The Court does not dismiss Landlord's breach of the implied covenant of good faith and fair dealing claim.

Dated this 30th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge

---

[1]  Landlord also seeks attorneys' fees pursuant to A.R.S. §12-349, arguing Swig's Motion is futile.  (Doc. 13 at 17 n.9.)  Given that Swig's Motion is mostly successful, the Court denies Landlord's request.